[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a dissolution action brought by the plaintiff husband against the defendant wife. There are two minor children issue of the marriage, Alicia born in 1985 and Amber born in 1987.
The marriage has broken down irretrievably with no hope of reconciliation. One of the parties has lived in the State of Connecticut for at least one year prior to the institution of this action. Neither of the parties has been the recipient of local, state or national aid.
The parties have agreed on custody and visitation of the two children. They have not agreed on support. The amount of support and the disposition of the major marital assets, the plaintiff's business and the marital home are the items in contention.
To determine the answer to these questions, the court must and does consider all of the items set forth in Connecticut General Statutes 46b-81 and 46b-82, the relevant case law and the evidence. CT Page 8318
The parties were married in June of 1984 so this is a nine year marriage. The plaintiff is 35 years of age and the defendant is 37 years of age. The plaintiff finished three years of high school and the defendant four years plus one year of college. The plaintiff was born in Greece and the defendant in Poland.
Each had brought a car to the marriage. The plaintiff used, in addition, a Workman's Compensation settlement of $16,000.00 as a down payment on the marital home. The defendant received money from her mother and brother, some $6,000.00, for part of the down payment as well. The defendant also used her pension for the purchase of a home in Ausable, New York. When that was sold, that money was then used to pay down the mortgage on the marital home.
The plaintiff was the only wage earner until October of 1981 because he insisted on the defendant remaining at home and caring for the children and the home.
The defendant, in addition to caring for the home and children, also took care of her husband's business records and his business was conducted out of their home until September of 1992 while this action was pending, when he moved his business to his sister's home on Bond Street and also incorporated it under a different name.
The plaintiff also made repairs and renovations to the marital home, converting it from a three family illegal residence to a three family legal residence.
On this basis, the court finds that each contributed equally to the marital assets.
The cause of the breakdown appears clearly to be the plaintiff's conduct. For example, all vacations but one he took alone. When he was not at biker's meetings and outings, he was hunting, fishing or playing golf. He also abused his wife verbally in front of the children and other people, causing her humiliation and distress. That she did not bring this action herself was simply because she believed her vows were forever and that she, in effect, had to accept his conduct.
The economic situation is as follows. The major asset is the marital home which both parties value at $150,000.00 with a CT Page 8319 mortgage of $42,000.00 leaving an equity of $108,000.00. When from the income of the two rental units in the house is deducted the expenses for the house, there is a net annual income of $3,676.00 or $70.69 a week. See exhibit two, 1991 income tax return, schedule E.
If a $170.00 is deducted from the defendant's expenses, her expenses substantially equal that of her husband of $540.00 a week. With an income of $257.69 to break even, she needs at least $200.00 a week. Her earnings, as verified by a letter from her employer (exhibit L), was $11.00 an hour for 15 to 20 hours a week.
The plaintiff's earnings, on the other hand, are somewhat less clear. In the first place, he has filed two affidavits within two days of each other. In the first one he set forth his weekly net wage at $350.00 a week. In the second one he gave the wage as $187.00 a week. However, he also testified that he was taking $350.00 a week as his salary.
Actually, neither figure is probably correct given the testimony of the defendant and exhibit 11. That exhibit is a picture of bank notes amounting to some $20,000.00 which the defendant found hidden in the house. She testified that he frequently had large sums of cash in his possession and that they never lacked for anything while he was the primary supporter of the family.
When queried about having that large amount of cash, the plaintiff first denied it, then said the money found by the defendant was from his bank account. However, there were no withdrawal slips introduced to substantiate that claim.
The plaintiff's affidavit is not credible — especially when his expenses are set forth as $529.00 a week. In fact, that figure might be the most accurate one for his net income. In addition, the plaintiff testified that in September of 1992, that is, while this case was pending, he moved the location of his business to his sister's home on Bond Street. He also incorporated the business and changed its name. Finally, he transferred to his sister a 51 per cent interest in the business with no monetary consideration and only a vague understanding that once his sister became a lawyer she would help him. She is presently a law student. See exhibit J.
The result of this transfer to his sister was to reduce CT Page 8320 the plaintiff's earnings so that he earned $3,889.00 and his sister earned $4,047.00. See exhibit J. In fact, it appears that the earnings given in exhibit J are for four months. When that is multiplied by three, the total income would be $23,346.00 a year or $429.70 a week for both.
The court finds, by clear and convincing evidence, that this is a fraudulent transfer made, it appears to the court, while the case is pending in order to divert assets and income from the defendant and made without any adequate consideration. It is also in fraud of the children to whom he owed a duty to support at the time he made the transfer.
On this basis, the court finds that the plaintiff's gross income is at least $460.00 a week.
The defendant at his insistence had not worked since she married the plaintiff until October of 1991 when the plaintiff stopped paying the bills and shut off her credit cards. She went back to work as a dental chair side assistant at $11.00 an hour as has been indicated above for 15 — 20 hours a week.
While the defendant maybe able to work more hours, given the ages of the children and her responsibility for their care, the court will not require her to do so, particularly when her husband has seen fit to give his sister what amounts to $4,000.00 a year.
The parties have agreed on custody and visitation but not on support or on the disposition of the major assets, to wit: the marital home and the plaintiff's business. The support order is determined by the guidelines using the figures the court has found for the weekly income of each party, to wit: the plaintiff at $439.02 a week net and the defendant at $187.00 a week net. On that basis, with a combined income of $626.02, the guidelines require that $256.66 be provided for the support of the children. The defendant's share of that amount is 30 per cent and the plaintiff's share is 70 per cent or $179.66.
There was some discussion of the insistence of both parties that the children attend parochial school, which has a cost of $3,200.00 a year for both children or $61.54 a week.
The court believes that the child support order should include one half that tuition or $30.77 a week in addition to the minimum required of the guidelines. CT Page 8321
The remaining question concerns the disposition of the marital assets, the marital home and the plaintiff's business. The plaintiff's business is a contracting business called A A Exterior Home Corporation which performs general contracting work. The plaintiff was trained as a tool and dye maker and worked in that capacity until the marriage when he changed and began his own contracting business. He incorporated this business, as has been noted above, while this case was pending in September of 1992 and also made what the court has found to be a fraudulent conveyance of 51 per cent of his interest in the business to his sister. In his affidavits, the plaintiff valued his interest in the business at $5,000.00, representing 49 per cent thereof. Plaintiff's counsel claimed that the plaintiff's business was deteriorating but the plaintiff testified that business always begins to pick up in April, and it was in April when we heard the testimony.
While the defendant has no interest in obtaining any part of the plaintiff's business, she does wish to retain the marital home which is a source of income as well as a residence for her and the two children. Given the court's prior finding that each has contributed equally to the purchase and upkeep of the home, it appears that each of them has a 50 per cent interest in the equity or approximately $54,000.00. It is apparent that the defendant is in no position to pay that amount or even to obtain a home equity mortgage for that purpose given her present income and the support order. Since the income is being used for the support of the children and the defendant, the plaintiff can hardly complain that at least part of his obligations are being fulfilled in this manner.
The plaintiff's business, which is the other marital asset, has been valued by him at approximately $10,000.00. This includes only the equipment and makes no allowance for good will. Since the plaintiff was able to conduct his business because his wife took care of his home and children thus freeing him from those responsibilities, she is entitled to a half interest in the business. This would reduce the plaintiff's share in the equity of the home to $49,000.00. In addition, he is also responsible for one half the mortgage or $21,000.00. If the defendant agrees to be responsible for the mortgage in full, the plaintiff's interest would then become $28,000.00.
Since the defendant is in no position to pay any such sum to the plaintiff at this time, the court would order the defendant CT Page 8322 to provide a mortgage to the plaintiff for that amount payable on the sale of the house or earlier at the option of the defendant. The house must be sold no later than six months after the youngest child reaches the age of 18 years. The plaintiff's mortgage would then be paid together with interest at five (5%) per cent per annum from the date of its execution.
Despite injuries from a accident, the plaintiff appears in good health as does the defendant.
Having taken all of the above into consideration together with the respective abilities of each to acquire additional assets, the health of each, their age and earning capacities and the ages of the children who will be living with the defendant, the court makes the following orders and findings:
1. The marriage has broken down irretrievably with no hope of reconciliation and it is hereby dissolved.
2. The parties have stipulated with respect to custody and visitation of the two children and that stipulation is entered as an order of this court and a part of its decree.
3. Upon the court's findings of the respective incomes of the parties, the plaintiff is ordered to pay $210.66 a week as child support payable on Friday of each week beginning the first Friday after the date of this judgment. This support order will include the plaintiff's share in the parochial school tuition.
4. The plaintiff shall convey to the defendant all his right, title and interest in the marital home, and the defendant shall assume the responsibility for the taxes, maintenance, insurance and mortgage of the home. The defendant shall also provide the plaintiff with a mortgage in the amount of $28,000.00 representing his half interest in the home less his responsibility for half of the mortgage less his wife's half interest in his business. The mortgage will be paid at the time the house is sold or sooner at the option of the defendant. The house must be sold no later than six months after the youngest child reaches the age of 18 and at that time the mortgage must be paid together with interest at the rate of five (5%) per cent per annum beginning with the execution of the mortgage. If the mortgage is paid earlier the sale of the house shall be at the defendant's option. CT Page 8323
5. Since the home provides some rental income to the defendant, the court orders the plaintiff to pay her $75.00 a week alimony. There appears to be no reason to pay the plaintiff alimony and none is ordered.
6. The plaintiff shall provide medical, dental and hospitalization insurance for both children so long as he has a duty to support either or both of them. The parties shall share equally in the cost of any unreimbursed medical, dental or hospital bills.
7. The plaintiff shall retain possession of his business, his car, that is his vintage Camaro, his Harley-Davidson motorcycle and his gold holdings.
8. The plaintiff shall contribute monthly the sum of $150.00 to the defendant to help pay for her health insurance costs until she dies, remarries, cohabits or is able to provide the same from her employment.
9. Each party shall make reasonable efforts to obtain life insurance in the amount of $50,000.00 with the children named as irrevocable beneficiaries. If either party is found to be uninsurable he or she shall report that to the other party who may petition the court for a review of the claim of insurability. Any claim that the costs of the insurance is beyond the ability of either party to pay may also be made to this court to determine its accuracy and to take further action if the court finds it necessary.
10. The plaintiff is ordered to contribute $2500.00 to the defendant's attorneys fees.
11. A conditional wage execution shall issue.
It is so ordered.
MARGARET C. DRISCOLL STATE TRIAL REFEREE